# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

**BUCKNELL INVESTMENT COMPANY**

Case No. DM 12-90605
Chapter 11
Honorable Scott W. Dales

Debtor.

_____/

## MOTION FOR ORDER APPROVING
## SALE OF REAL ESTATE

Bucknell Investment Company, Debtor in Possession, was granted the authorization to operate the business, pursuant to U.S.C. Section 1108 in the Definitive Order. In accordance with 11 U.S.C. Section 1107 the Debtor in possession has the authority of a trustee for the purpose of liquidating assets of the estate. For the purpose of this motion, the Debtor in possession states as follows;

1. The Debtor has an offer to purchase real estate. The land and terms of the offer to purchase are stated below, along with the Realtors, Buy and Sell Agreement being filed with the court.

2. The Debtor in Possession is the owner, in fee simple, of 4 parcels of real estate, commonly known by their street address's of 5133, 5135, 5137, and 5139 Sunset Road, Ironwood, MI 49938 . Their Legal Descriptions are: Lot 78, 80, 82, and 84 respectively of the Ironwood Homestead Addition... to the Township of Ironwood, Gogebic County, MI .
   TIN 2703-09-000-500 and 2703-09-000-600

3. The offer to purchase the real estate is from Mr. Robert Brugger of W6302 Deerview Rd, Black Creek, WI 54106. Debtor has never met the Purchaser and this transaction was arranged by the Realtors. All conditions of the sale have been met. The offer to purchase the real estate is a cash offer of $38,000 for a deed free and clear of any outstanding liens. Gogebic Range Bank has a blanket mortgage on 5133, 5135, and 5139 Sunset Road. Citizens State Bank has a blanket mortgage on 5137 Sunset Road. Purchaser has agreed to pay $38,000. for the four units or $9500.each. Debtor intends to assign a value of $9,500 per unit without allocation of purchase price by appraisal or other valuation method. This would result in $28,500 of the gross proceeds of sale to Gogebic Range Bank and $9,500 of the gross proceeds of the sale to Citizens State Bank less the specific real estate taxes and prorated costs of sale. Debtor with the consent of the Banks has entered into the agreement and requests the Courts approval of the sale.

Gogebic Range Bank would receive $28,500 less $4525 in attaching real estate taxes, 3/4 of the Realtors commissions $2250 and $600. in estimated closing costs. The full balance of their prorated net proceeds, in the approximate amount of $21,125 shall be paid to Gogebic Range

Bank.

Citizens State Bank would receive $9,500 less $3,486 in attaching real estate taxes, 1/4 of the Realtors commissions $750 and $200 in estimated closing costs. The full balance of their prorated net proceeds, in the approximate amount of $5,064 shall be paid to Citizens State Bank of Ontonagon.

4. The real estate parcels are 4 attached townhouses in one building. The real estate is in average rental condition. The roof is old and will need to be replaced soon. The electric is 60amp fuses and needs to be updated.. Debtor intended to fix up and repair the property, although, it now appears that the amount of time and cost will be excessive for what Debtor could recover from this property.

5. Debtor can not divert funds from its Plan to accomplish this rehabilitation, since feasibility is at issue, and the cash flow needs to be conserved for Plan payments. This real estate has become burdensome to Debtor. This real estate is not necessary for the rehabilitation of the Debtor. The Purchase price is the fair market value for this real estate in its current as is condition.

6. The Debtor is requesting an Order allowing this sale of real estate, and a hearing on this motion scheduled for the next available hearing date.

WHEREFORE; The Debtor in Possession moves for an Order allowing the sale of the above stated real estate.

Respectfully Submitted
Bucknell Investment Company
By James M. Bucknell

Dated 3/2/15

Dated 3/3/15

Rudolph F. Perhalla (P39914)
Attorney for Debtor
1441 East Cloverland Dr.
Ironwood , MI 49938
906-932-4494



A-1

## Buy and Sell Agreement



EQUAL HOUSING OPPORTUNITY

Offer Date: __February 12__ , 2015

Selling Office: _____Silver Properties_____ ("Selling Broker")

Selling REALTOR®: _____Gayle Colassaco_____

Selling REALTOR®'s Email Address: _____gayle@silverproperties.com_____

Selling REALTOR®'s Phone: (906) 364-0621 _____ Facsimile: (906) 932-1583

Listing Office: _____Silver Properties_____ ("Listing Broker")

Listing REALTOR®: _____Jeese Baroka_____

Listing REALTOR®'s Email Address: _____jesse@silverproperties.com_____

Listing REALTOR®'s Phone: (906) 932-1200 _____ Facsimile: (906) 932-1583

1. **PROPERTY DESCRIPTION:** Buyer agrees to buy from Seller the property located at **E5133, E5135, E5137,**
**E5139 Sunset** Rd , **Gogebic** County, Michigan, and legally
described as: **See Attached Exhibit "A"**
**Parcel #'s 2703-09-000-500 & 2703-09-000-600 & 2703-09-000-700**

The property includes all buildings; all fixtures; all gas, oil, and mineral rights owned by Seller; built-in appliances; lighting fixtures; plumbing fixtures; water softener (unless rented); heating fixtures; electrical fixtures; radio and television antennas and any mechanical controls; shades; awnings; shutters; window blinds; curtain and drapery rods; attached floor coverings; attached fireplace doors and screens; garage door openers and controls; screens, storm windows and doors; landscaping, fences, and mailboxes, if any; and **ranges, refrigerators**

but does not include: **seller or tenants personal property**

2. **PURCHASE PRICE:** The purchase price for the property is $ **30,000.00**

3. **METHOD OF PAYMENT:** All payments must be in the form of cash, certified check, cashiers check, or money order. The purchase will be completed by the following method:

   [X] CASH: Buyer will pay the purchase price in cash upon Seller's delivery of a warranty deed conveying marketable title.

   [ ] NEW MORTGAGE: This Agreement is contingent on Buyer's ability to obtain a _____
   mortgage loan in the amount of $ _____ . Buyer will provide evidence of mortgage application and appraisal order from Buyer's lender within _____ days of the date of this Agreement. If Buyer fails to deliver to Seller evidence of the loan approval before _____ , _____ , Seller may cancel this Agreement. The sale will be completed upon Seller's delivery of a warranty deed conveying marketable title.

   [ ] LAND CONTRACT: Buyer will purchase the property on land contract with a $ _____ down payment and monthly installments of principal and interest in the amount of $ _____ or more, including annual interest of _____ percent. Buyer will pay the entire balance, which may require a lump-sum payment, within _____ years after closing.

   [ ] MORTGAGE ASSUMPTION or LAND CONTRACT ASSIGNMENT: If the holder of the mortgage or land contract agrees, Buyer will assume and pay Seller's existing mortgage or land contract according to its terms. Buyer will pay the difference between the purchase price and the existing balance of approximately $ _____ upon Seller's delivery of a warranty deed or a land contract assignment. Buyer will reimburse Seller at closing for any funds held in escrow.

4. **TITLE INSURANCE:** Seller shall provide to Buyer, at Seller's expense, an owner's policy of title insurance with standard exceptions in the amount of the purchase price. Seller will apply for a commitment for title insurance within __5__ days after the Buyer has waived all other contingencies contained in this Agreement. Any special exception will be subject to Buyer's approval, provided that this contingency shall be deemed waived unless Buyer notifies Seller in writing within __2__ days of receipt of the commitment. Seller will have 30 days after receiving written notice to remedy any claimed defect.

Form A ©1995 Michigan Association of REALTORS®, Revised 8/13

Silver Properties, 919 E. Cloverland Dr Ironwood, MI 49938
Phone: 906-932-1200105     Fax: 906-932-1583     Gayle Colassaco                                      Brugger. R
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

A-2

5. **PROPERTY INSURANCE:** Seller shall be responsible for fire and extended coverage insurance on the property until sale is closed.

6. **CLOSING COSTS:** Seller shall pay all state and county transfer taxes and costs required to convey clear title. Buyer shall pay the cost of recording the deed and/or security interests and all mortgage closing costs and fees required in connection with the Buyer's loan and the issuance of the lender's title insurance policy.

7. **REAL ESTATE TAXES:** Seller will pay all prior years' real estate taxes. The current year's real estate taxes will be paid as follows:

   ☐ NO PRORATION: Seller will pay the taxes which are due before the date of closing. Buyer will pay taxes which are due on or after the date of closing. "Due" means the date on which a tax becomes payable.

   ☒ PRORATION: With current year taxes treated as though they are paid in ☒ arrears ☐ advance, based on a ☒ calendar year ☐ fiscal year.

   ☐ OTHER: _____

8. **SPECIAL ASSESSMENTS:** All special assessments for municipal improvements which have become a lien on the property shall be paid by the Seller, provided, however, that in the event a special assessment is payable in installments, current and future installments shall be ☒ allocated between Seller and Buyer using the same method for the proration of real estate taxes in paragraph 7 above; or ☐ paid in full by Seller at closing.

9. **MISCELLANEOUS PRORATED ITEMS:** Rent, association fees, insurance (if assigned) and fuel, as well as interest on any existing land contract, mortgage or other lien assumed or to be paid by the Buyer, will be prorated to the date of closing.

   Additional items: <u>Rent from all tenants, all tenants security deposits shall be</u>
   <u>transferred to buyer at time of closing</u>

10. **CLOSING DATE:** Sale to be closed on or before _____ March 16 _____, 2015 .

11. **OCCUPANCY:** Seller will give occupancy as follows:

    ☐ Immediately after closing.

    ☐ _____ days after closing by 12:00 noon. From the date of closing to the date of vacating, Seller will pay Buyer $ _____ per day as an occupancy charge. At closing, Seller will pay $ _____ to Listing Broker to be held in escrow. After Buyer shall vacate the property, Listing Broker will use these funds to pay the accrued occupancy charge to Buyer and refund the balance, if any, to Seller. Seller is liable to Buyer for damage to the property occurring after closing and before vacating, to the extent not covered by the Buyer's homeowners policy, as well as for any deductible portions of a covered claim.

    If tenants occupy the property, then:

    ☐ Seller will cause the tenants to vacate the property before closing.

    ☒ Buyer will take the property subject to the rights of the tenants.

12. **SELLER'S DISCLOSURE:**

    ☒ Buyer acknowledges that a Seller's Disclosure Statement has been provided to Buyer.

    ☐ Seller shall provide Buyer with a Seller's Disclosure Statement with Seller's acceptance of this offer. Pursuant to the Seller Disclosure Act, MCL 559.951, *et seq.*, Buyer will have 72 hours after hand-delivery of the disclosure statement (or 120 hours after delivery by registered mail) to terminate this Agreement by delivery of a written notice to Seller or Seller's agent.

13. **RELEASE:** Buyer and Seller acknowledge that neither Listing Broker nor Selling Broker, nor their respective agents, have made any representations concerning the condition of the property covered by this Agreement or the marketability of title, and Buyer and Seller release the Listing Broker and Selling Broker and their respective agents, with respect to all claims arising out of or related to this Agreement, any addendums or counteroffers; all claims arising from any purported representations as to the physical and environmental condition of the property covered by this Agreement or the marketability of title; and all claims arising from any special assessments and/or utility bills which have been or may in the future be charged against the property covered by this Agreement and, in addition, agree to indemnify and hold harmless the Listing Broker and Selling Broker and their respective agents from any and all claims related to those matters.

Form A ©1995 Michigan Association of REALTORS®. Revised 8/13

A-3

14. **LEAD-BASED PAINT DISCLOSURE/INSPECTION (For residential housing built prior to 1978 only):** Buyer acknowledges that prior to signing this Agreement, Buyer has received a copy of the *Lead-based Paint Sellers Disclosure Form* completed by the Seller on ___05/22/2013___ , the terms of which shall be part of this Agreement. Buyer also agrees (check one below):

☐ Buyer shall have _____ days after the date of this Agreement to conduct an inspection of the property for the presence of lead-based paint and/or lead-based paint hazards. (Federal regulations require a 10-day period or other mutually agreed upon period of time.) If Buyer is not satisfied with the results of this inspection, upon notice from Buyer to Seller within this period, this Agreement shall terminate and any deposit shall be refunded to Buyer.

☐ Buyer hereby waives his/her opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

15. **LAND DIVISION ACT (For unplatted land only):** Seller and Buyer agree that the following statements shall be included in the deed at the time of delivery:

(a) The grantor grants to the grantee the right to make ___all___ (insert "zero" or a specific number, as appropriate) division(s) under section 108 of the Land Division Act, MCL 560.108.

(b) This property may be located within the vicinity of farm land or a farm operation. Generally accepted agricultural and management practices which may generate noise, dust, odors and other associated conditions may be used and are protected by the Michigan right to farm act.

**CAUTION:** If the space contained in subparagraph (a) above is left blank, the deed will NOT grant Buyer the right to any divisions.

16. **PROPERTY INSPECTIONS:** Buyer has personally inspected the property and accepts it in AS IS present condition and agrees that there are no additional written or oral understandings except as otherwise provided in this Agreement.

☐ This offer is contingent upon satisfactory inspections of the property, at Buyer's choice and at Buyer's expense, no later than _____ business days of the date of this Agreement. These inspections may include, but may not be limited to, structural and/or mechanical inspections, survey and site investigation, soil borings, as well as inspections for radon, pests, mold and/or asbestos. Buyer agrees to return the property to its prior condition after any inspections or tests. If Buyer is not satisfied with the results of any inspection, upon written notice from Buyer to Seller within this period, this Agreement shall terminate and any deposit shall be refunded to Buyer. In the event the Buyer neither removes the contingencies nor terminates this Agreement in the time provided, the Buyer shall be deemed to have waived this contingency. Any request by Buyer to modify this Agreement based on the results of an inspection shall terminate this Agreement unless: (a) the request is agreed to by Seller in writing, or (b) the Buyer removes the inspection contingency in writing within the time for inspections.

☒ Buyer acknowledges that Selling Broker/REALTOR® has recommended that Buyer obtain an inspection of the property by an inspector and/or a licensed contractor. Buyer does not desire to obtain an inspection of the property.

17. **EARNEST MONEY DEPOSIT:** Buyer deposits $ __5,000.00_____ to be held by _____**Silver Properties**_____ __upon acceptance__ ("Escrowee") evidencing Buyer's good faith, which deposit shall be applied to the purchase price at closing.

If this offer is not accepted or title is not marketable, or insurable or if the terms of purchase are contingent upon ability to obtain a new mortgage or any other contingencies as specified, which cannot be met, this deposit shall be refunded to Buyer. In the event the Buyer and Seller both claim the earnest money deposit, the earnest money deposit shall remain in Escrowee's trust account until a court action has determined to whom the deposit must be paid, or until the Buyer and Seller have agreed in writing to the disposition of the deposit. (This paragraph may be subject to the arbitration provisions in paragraph 22 below.)

18. **DEFAULT:** If Buyer defaults, Seller may enforce this Agreement, or may cancel the Agreement, keep the deposit, and pursue legal remedies. If Seller defaults, Buyer may enforce this Agreement or may demand a refund of the deposit and pursue legal remedies. (This paragraph may be subject to the arbitration provisions in paragraph 22 below).

19. **LIMITATION:** Buyer and Seller agree that any and all claims or lawsuits which they may have against the Listing Broker and its agents and/or Selling Broker and its agents relating to their services must be filed no more than six (6) months after the date of closing of the transaction described in this Agreement. Buyer and Seller waive any statute of limitations to the contrary.

Form A ©1995 Michigan Association of REALTORS®. Revised 8/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          Brugger. R

A-4

20. **ENTIRE AGREEMENT:** Buyer and Seller agree that this is the entire agreement between the parties and that there are no other written or oral understandings. Buyer and Seller further agree that this Agreement supersedes any and all prior agreements, understandings or representations made by the parties or their agents.

21. **WALK-THROUGH:** Buyer has the right to walk through the property within forty-eight (48) hours prior to closing.

22. **ARBITRATION:** Any dispute over the disposition of any earnest money deposits or claim arising out of or related to the physical condition of any property covered by this Agreement, included without limitation, claims of fraud, misrepresentation, warranty and negligence, shall be settled in accordance with the rules, then in effect, adopted by the endorsed provider of arbitration services for the Michigan Association of REALTORS®. This is a voluntary agreement between the Buyer and Seller. Failure to agree to arbitrate does not affect the validity of the Agreement. A judgment of any circuit court shall be rendered on the award or determination made pursuant to this Agreement. This Agreement is specifically made subject to and incorporates the provisions of the Michigan Uniform Arbitration Act, MCL 691.1681. *et seq.* This Agreement is enforceable only as to parties and brokers/agents who have agreed to arbitrate as acknowledged by their initials below. The terms of this paragraph shall survive the closing.

INITIAL IF YOU AGREE TO ARBITRATE:

Seller _*_____   _____   Buyer _____   _____   Listing Broker _____   Selling Broker _____

23. **ELECTRONIC COMMUNICATION:** As an alternative to physical delivery, the parties agree that this Agreement, any amendment or modification of this Agreement and/or any written notice or communication in connection with this Agreement may be delivered to the Seller in care of the Listing REALTOR® and the Buyer in care of the Selling REALTOR® via electronic mail or by facsimile via the contact information set forth above. Any such communication shall be deemed delivered at the time it is sent or transmitted. Seller represents and warrants that an electronic email address has been provided to Listing REALTOR® from which Seller may receive electronic mail. Buyer represents and warrants that an electronic email address has been provided to Selling REALTOR® from which Buyer may receive electronic mail. The parties agree that the electronic signatures and initials shall be deemed to be valid and binding upon the parties as if the original signatures or initials were present in the documents in the handwriting of each party.

24. **COUNTERPARTS:** This Agreement may be signed in any number of counterparts with the same effect as if the signature of each counterpart were upon the same instrument.

25. **HEIRS, SUCCESSORS AND ASSIGNS:** This Agreement binds Seller, Seller's personal representatives and heirs, and anyone succeeding to Seller's interest in the property. Buyer shall not assign this Agreement without Seller's prior written permission.

26. **OTHER CONDITIONS:** Cash offer contingent upon buyer viewing E5133 & E5139 by February 27, 2015.

27. **THIS OFFER WILL EXPIRE ON** __February 16__ . 2015 at __5:00__ ☐ A.M. ☒ P.M., or upon Seller's receipt of revocation from Buyer, whichever is earlier.

28. **RECEIPT IS ACKNOWLEDGED BY BUYER** of a copy of this Agreement.

_____   _____
Buyer Signature                    Buyer Signature

Robert Brugger                     _____
Print Name                         Print Name

BUYER'S ADDRESS: W6302 Deerview Rd, Black Creek, WI   54106

Deposit in the form of ☐ Personal Check ☐ Other _____
received by _____ Gayle Colassaco
              Selling Broker/REALTOR®

Form A ©1995 Michigan Association of REALTORS®. Revised 8/13

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Brugger. R

Wisconsin Legal Blank Co., Inc.
Milwaukee, Wis.

Approved by Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)   3-1-10 (Mandatory Use Date)

## WB-44 COUNTER-OFFER

Counter-Offer No. _____1_____ by (Buyer/Seller) | STRIKE ONE |

1  The Offer to Purchase dated __2/12/15__ and signed by Buyer __Robert Bruggor__,
2  for purchase of real estate at __ES133  ES135  ES137  + ES139  Sunset Rd  Ironwood, MI__
3  is rejected and the following Counter-Offer is hereby made. **All terms and conditions remain the same as stated in the**
4  **Offer to Purchase except the following:  [CAUTION: This Counter-Offer does not include the terms or conditions in**
5  **any other Counter-Offer unless incorporated by reference.]**
6  _____
7  Sale price to be $45,000
8  _____
9  Parcel #2703-09-000-700 (vacant lots not attached to subject property
10 are removed from sale)  See Attached
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
26 _____
27 _____
28 _____
29 _____
30 Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31 This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32 making the Counter-Offer on or before __Feb. 23rd  2015__ (Time is of the
33 Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless
34 otherwise provided in this Counter-Offer.
35 **NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as**
36 **provided at lines 31 to 34.**
37 This Counter-Offer was drafted by __Jesse Bandgra / Silver Properties Inc__ on __2/17/2015__
38                                                    Licensee and Firm ▲                                  Date ▲

39 _____
40 Signature of Party Making Counter-Offer ▲        Date ▲        Signature of Party Making Counter-Offer ▲        Date ▲
41 Print name▶                                                   Print name▶

42 _____
43 Signature of Party Accepting Counter-Offer ▲     Date ▲        Signature of Party Accepting Counter-Offer ▲     Date ▲
44 Print name▶                                                   Print name▶

45 This Counter-Offer was presented by _____ on _____
46                                            Licensee and Firm ▲                         Date ▲

47 This Counter-Offer is **(rejected) (countered)** | STRIKE ONE | (Party's Initials) _____ (Party's Initials) _____
48 **NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or**
49 **incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer**
50 **by specifying the number of the provision or the lines containing the provision. In transactions involving more than**
51 **one Counter-Offer, the Counter-Offer referred to should be clearly specified.**
52 **NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.**

Wisconsin Legal Blank Co., Inc.  •  749 N. 37th Street  •  Milwaukee WI 53208  •  800-890-6890  •  www.wilegalblank.com

Approved by Wisconsin Department of Regulation and Licensing
11-1-09 (Optional Use Date)  3-1-10 (Mandatory Use Date)

Silver Properties

## WB-44 COUNTER-OFFER

Counter-Offer No. __2__ by (Buyer/~~Seller~~) STRIKE ONE

1  The Offer to Purchase dated __02/12/2015__ and signed by Buyer _____ Robert Brugger _____ ,
2  for purchase of real estate at _____ E5133, E5135, E5137 & E5139 Sunset Rd, Ironwood MI _____
3  is rejected and the following Counter-Offer is hereby made. **All terms and conditions remain the same as stated in the**
4  **Offer to Purchase except the following: [CAUTION: This Counter-Offer does not include the terms or conditions in**
5  **any other Counter-Offer unless incorporated by reference.]**
6  1.  Purchase price shall be $38,000 (thirty-eight thousand dollars).
7  2.  All other terms and conditions remain.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30  Any warranties, covenants and representations made in this Counter-Offer survive the closing of this transaction.
31  This Counter-Offer is binding upon Seller and Buyer only if a copy of the accepted Counter-Offer is delivered to the Party
32  making the Counter-Offer on or before _____ February 24, 2015 _____ 5:00 pm _____ (Time is of the
33  Essence). Delivery of the accepted Counter-Offer may be made in any manner specified in the Offer to Purchase, unless
34  otherwise provided in this Counter-Offer.
35  **NOTE: The Party making this Counter-Offer may withdraw the Counter-Offer prior to acceptance and delivery as**
36  **provided at lines 31-34.**

37  This Counter-Offer was drafted by _____ Gayle Colassaco/Silver Properties _____ on __02/22/2015__ .
38                                          Licensee and Firm ▲                                          Date ▲

39  _Robert Brugger_        _2-23-15_
40  Signature of Party Making Counter-Offer ▲        Date ▲      Signature of Party Making Counter-Offer ▲        Date ▲
41  Print name ▶                                                Print name ▶

42  _signature_              _2/26/15_
43  Signature of Party Accepting Counter-Offer ▲     Date ▲      Signature of Party Accepting Counter-Offer ▲      Date ▲
44  Print name ▶                                                Print name ▶

45  This Counter-Offer was presented by _____ Jesse Baroka/Silver Properties _____ on _____ .
46                                          Licensee and Firm ▲                                          Date ▲

47  This Counter-Offer is **(rejected) (countered)** STRIKE ONE (Party's Initials) _____ (Party's Initials) _____
48  **NOTE: Provisions from a previous Counter-Offer may be included by reproduction of the entire provision or**
49  **incorporation by reference. Provisions incorporated by reference may be indicated in the subsequent Counter-Offer**
50  **by specifying the number of the provision or the lines containing the provision. In transactions involving more than**
51  **one Counter-Offer, the Counter-Offer referred to should be clearly specified.**
52  **NOTE: Number this Counter-Offer sequentially, e.g. Counter-Offer No. 1 by Seller, Counter-Offer No. 2 by Buyer, etc.**